UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ARNALDO FLORES,
    Petitioner,

v.                                            CIVIL ACTION NO. 18-11447-PBS

DEAN GRAY,
    Respondent.

REPORT AND RECOMMENDATION
ON HABEAS CORPUS PETITION (#1).

KELLEY, U.S.M.J.

                                 I.     Introduction.

Arnaldo Flores, pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (#1.) Petitioner, convicted of murder in the second degree after a trial in which he raised a claim of self-defense, first asserts that his constitutional rights were violated when the trial judge did not allow him to present evidence of the decedent's criminal record at trial.[1] (#2 at 44, 47-9.) Second, he asserts that his right to a public trial was violated when the courtroom was closed during jury selection. *Id*. at 52-55. (He makes other claims concerning these two issues, including that his attorney rendered ineffective assistance of counsel in relation to them; these claims will be discussed further below.) Respondent filed an answer to petitioner's writ and a memorandum in

---

[1] As explained *infra*, petitioner's claim regarding the admission of the decedent's criminal record is based on the Massachusetts Supreme Judicial Court's decision in *Commonwealth v. Adjutant*, 443 Mass. 649 (2005), in which the court held that "where the identity of the first aggressor is in dispute and the victim has a history of violence … the trial judge has the discretion to admit evidence of specific acts of prior violent conduct that the victim is reasonably alleged to have initiated, to support the defendant's claim of self-defense." *Id.* at 664.

1

opposition, (##18, 23) and petitioner filed a reply. (#26.) For the reasons set out below, this court recommends that the district court deny the petition.

## II.   Procedural Background.

On May 19, 2011, petitioner was convicted of murder in the second degree and possessing a firearm without a firearm identification card following a jury trial in the Bristol Superior Court before Associate Justice of the Superior Court Susan E. Garsh. (S.A. at 2, 6.)[2] He was sentenced to life in prison on the murder charge and to a concurrent term of two years on the firearm charge. *Id*. at 6. Petitioner appealed to the Massachusetts Appeals Court (MAC), which affirmed the convictions. *Commonwealth v. Flores*, 84 Mass. App. Ct. 1110 (2013) (Table), 2013 WL 4835156 (Mass. App. Ct. Sept. 12, 2013). The Supreme Judicial Court (SJC) denied petitioner's request for further appellate review on October 31, 2013. *Commonwealth v. Flores*, 466 Mass. 1108 (2013) (Table).

Petitioner filed a motion for a new trial on November 3, 2014, and a motion for post-conviction discovery on November 12, 2015. (S.A. at 8-9.) The motions were denied by Judge Garsh on September 30, 2016, and December 22, 2016, respectively. *Id*. at 706, 715. The MAC affirmed the trial court's order denying the motion for new trial and the motion for discovery in an unpublished decision on April 17, 2018. *Commonwealth v. Flores*, 93 Mass. App. Ct. 1107 (2018) (Table), 2018 WL 1801599 (Mass. App. Ct. Apr. 17, 2018). The SJC denied a petition for further appellate review on June 29, 2018. *Commonwealth v. Flores*, 480 Mass. 1102 (2018) (Table). Petitioner timely filed this petition for habeas corpus on July 11, 2018. (#1.)

---

[2] The Supplemental Answer, which was filed manually with the Clerk's Office and is available in hard copy only, will be cited as "S.A."

2

### III.     The Massachusetts Appeals Court Decision.

In affirming the trial court's denial of the motion for new trial, the MAC did not recount the facts of the case, but instead adopted the facts set out in Judge Garsh's Order on petitioner's motion for new trial. *Flores*, 2018 WL 1801599, at *1. Judge Garsh's Order, thirty-eight pages long, describes in detail the testimony of every witness at trial and at the three-day evidentiary hearing on the motion for new trial, as well as facts pertaining to the issues raised by petitioner in the motion for new trial. (S.A. at 670-706.)  Only the facts from the Order and findings from the MAC's decision that are necessary to address petitioner's claims will be repeated here.

A. The facts at trial concerning decedent's death.

At trial, it was not disputed that petitioner was a drug dealer, and that the decedent, also a drug dealer, was in petitioner's apartment and was trying to rob him when petitioner shot and killed him. *Id*. at 680-81, 687-89. Petitioner testified at trial that as he struggled with the decedent, the decedent was somehow fatally shot and that petitioner acted in self-defense. *Id*. at 688-89.

A medical examiner testified that the decedent was shot three times--in the chest, in the back, and in the left thigh--and had a blunt force injury in the middle of his forehead. *Id*. at 686. Petitioner denied hitting the decedent on the head and denied knowing how decedent came to have a large lump on his forehead. *Id*. at 690. Petitioner insisted that during the struggle he never had a gun in his hand, although he and the decedent both had their hands on the gun at the same time. *Id*. He also denied that the decedent was backing up when he was shot, despite the location of the bullet wounds. *Id*. at 690-91.

B. Findings of fact concerning the decedent's criminal record.

Judge Garsh found that defense counsel, after he heard that the decedent had a criminal record in Puerto Rico, "made significant efforts" to obtain documents pertaining to the record prior

to trial. *Id*. at 672. Defense counsel "requested help from the Commonwealth and a Spanish speaking State Trooper made inquiries in Puerto Rico. As a result, the Office of the Chief Prosecuting Attorney for the Department of Justice of the Commonwealth of Puerto Rico sent the Massachusetts State Police a letter listing three convictions and a dismissed charge in Puerto Rico in 2001 for an Osvaldo Gonzalez Martinez, a/k/a Osvaldo Rios Maldonado."[3] *Id.* at 672-73. The convictions were for attempted robbery, larceny, and aggravated assault. *Id*. at 673. The question was whether defense counsel could show that the Puerto Rican record was the decedent's record.

Counsel arranged for someone in Puerto Rico to seek to obtain court records pertaining to the convictions, but that person was unable to obtain certified copies of the criminal records prior to the trial. *Id*. at 673. Thus, when the trial began, defense counsel did not have a certified record of convictions to proffer, nor did he have a fingerprint card from Puerto Rico to which the decedent's fingerprints could be compared. *Id*.

Some time prior to trial, the Commonwealth advised defense counsel that, if he wanted to further investigate the criminal record, he should move to continue the trial. *Id*. When defense counsel asked the Commonwealth if it would stipulate to the records, the Commonwealth declined, responding that the document that defense counsel had obtained that purported to be a record of the decedent's criminal history, was not under the decedent's name, and the Commonwealth had "no way of knowing that it is the same person." *Id*. The Commonwealth further stated that it did not "believe that there is sufficient information to demonstrate that those convictions ([of] which [the Commonwealth] ha[d] seen no actual documentation []) have anything to do with our victim." *Id*. at 674.

---

[3] According to the Order, the decedent's name was Osvaldo Gonzalez Martinez. (S.A. at 672.)

Petitioner had told counsel that he wanted a quick trial. *Id*. Counsel consulted with petitioner about whether to seek more time prior to trial to pursue obtaining the certified copies of the convictions, and they jointly decided not to move to continue the trial date. *Id*.

Judge Garsh found that she did not abuse her discretion by not admitting the *Adjutant* evidence that defense counsel proffered, because the proffer did not meet the foundational requirements for admission. *Id*. at 698-99. "With respect to proof of prior convictions, more than mere identity of name is required." *Id*. at 698 (citation omitted). Further, under *Adjutant*, a defendant is required to provide actual details surrounding the crimes that demonstrate the decedent was the aggressor, and "the [petitioner's] proffer contained no underlying facts establishing whether the incidents at issue met the standard for *Adjutant* evidence." *Id*.

The MAC agreed with Judge Garsh's findings and her conclusion that she did not abuse her discretion in excluding the proffered *Adjutant* evidence. 2018 WL 1801599, at *2.

C. <u>Facts concerning the alleged courtroom closure</u>.

The following facts are taken directly from Judge Garsh's Order:[4]

> Jury impanelment commenced on May 10, 2011. The transcript reflects that the Court made the following statements to [petitioner] while going over the jury selection process with him: "You have the right to be present. We're going to be asking questions of the jurors in this - all the jurors will be in the back of the courtroom. We're going to be asking them questions. Everyone is to remain out of the courtroom during this process." The Court mis-spoke in discussing the jury selection process with [petitioner]. However, there was a significant time lag between the making of that statement and the start of impanelment. No instruction or order ever issued from the Court closing the courtroom. The Court is convinced that no court officer cleared the courtroom when the Court made the statement at issue or at the outset of the impanelment. On May 18, 2011, the final day of trial, the Commonwealth requested counsel to "agree on the record that during the course of this trial it has been open to the public during all stages, including impanelment as well as jury instructions." [Defense counsel] did not see any persons denied entry to the courtroom or escorted out of the courtroom during jury selection. He responded that "[he] wasn't aware of anybody being excluded at all." The Court

---

[4] Some footnotes from the Order have been omitted.

stated that "[t]he trial has been open at all times, including during impanelment and including during the charge." The Court definitely would not have so found had the public, in fact, been excluded from impanelment.

The courtroom in which [petitioner's] trial was held has the potential to seat a little over one hundred potential jurors and members of the public if, as often happens, the jury box is utilized to seat potential jurors. The courtroom was not crowded during the voir dire proceedings in [petitioner's] trial. There was room for the public to be accommodated. Seventy-six jurors came into the courtroom for impanelment on the first day. All were interviewed.

The jurors entered the courtroom from a secure corridor through a door near the judge's bench. The public entered through a door at the other end of the courtroom. It was common practice to leave the courtroom doors open to the public during impanelment. Members of the public were not routinely excluded from the general voir dire or the individual voir dire. It was common practice for a court officer to direct members of the public to sit in the last row of seats during jury impanelment, reserving the front seats for the venire.

It was not standard practice for court officers, in the presence of this judge, to ask the public, by words or by gestures, to leave the courtroom during jury selection even when the courtroom was crowded. The Court is confident that no such instruction was given in this judge's presence. This judge was particularly vigilant in ensuring that accommodations were made for the public to attend all phases of a trial, including jury selection, both general and individual voir dire.[5] This judge has

---

[5] The Court inserted the following footnote:

Before the [petitioner's] trial, the Court was very familiar with *Commonwealth v. Cohen (No. 1)*, 456 Mass. 94 (2010). Indeed, before *Cohen* issued, the Court was extremely familiar with the holding *in Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984) (holding that the voir dire of prospective jurors, including individual voir dire, is presumptively open to the public under the First Amendment and that the "presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest") and with *Cape Cod Times v. Commonwealth*, No. SJ[]-99-0541 (Sup. Jud. Ct. for Suffolk County February 11, 2000) (Spina, J, single justice) ("[A]ll court personnel must be sensitive to the importance of a public trial, and every effort must be made to accommodate that principle in accordance with law[.]"). See "Guidelines on the Public's Right of Access to Judicial Proceedings and Records," issued on March 15, 2000 by the Supreme Judicial Court Judiciary/Media Steering Committee (acknowledging "the considerable efforts of Hon. E. Susan Garsh, an Associate Justice of the Superior Court and a member of the Judiciary/Media Steering Committee, for producing these Guidelines on behalf of the Committee"). The Guidelines state that voir dire proceedings are presumptively open and, at note 14, cite, in addition to *Press-*

never heard a court officer ask persons who were present in a courtroom in Fall River during pre-impanelment hearings to leave the courtroom because the venire was being brought down. The Court has never heard a court officer ask members of the public present for general voir dire in a courtroom in Fall River to leave because voir dire was about to commence.

The Court does not credit [petitioner's] testimony that he turned around and saw one of the court officers escort ten to fifteen members of the public, including his mother, sister and stepfather, out of the courtroom on the first day of jury selection right when the Court stated that "[e]veryone is to remain out of the courtroom during" the jury selection process. The Court was in a position to have observed such an exodus and did not. Contrary to [petitioner's] testimony, the Court's statement was made while the Court was engaged in a colloquy with [petitioner] and not while speaking with [defense counsel]. The statement was made at least thirty-seven minutes before any jurors were brought into the courtroom. After the Court spoke with the [petitioner] and the attorneys, there was a recess from 9:47 a.m. to 10:24 a.m. Only at the end of the recess did the venire enter the courtroom. A jury was not selected on the first day and, thus, impanelment continued on the morning of the second day of the trial. [Petitioner] does not recall seeing anyone ushered out of the courtroom on the following day and does not know whether his family members were present that day.

The Court does not credit [the petitioner's mother, Luzeneida] Torres' testimony that, shortly after a bunch of people entered the courtroom from a door close to the judge, a court officer ordered all present to leave except for the jurors. She testified that she was outside about a half-hour or so before she re-entered, adding that she did not remember exactly and she does not "recall so many things." A half hour or so absence from the courtroom on the first morning of the trial would be consistent with the amount of the time that the court was in recess before impanelment began. Torres does not recall what was happening in the courtroom when she re-entered. She does not recall being asked to leave or not being allowed to enter on more than one day.

The Court does not credit the testimony of Keila Caffey, [petitioner's] sister, that when the court said the courtroom was going to be closed, a court officer came over to where she, her mother and stepfather were sitting in the front row and told them they had to leave but that they would be allowed back in. She also testified that, at that point, a group of people were about to come inside. In fact, the jurors entered thirty-seven minutes after the Court finished discussing issues with counsel and [petitioner]. It was typical for a court officer to ask family members in the front row and others to move to the back row as jurors entered. Coffey claims that she was

---

*Enterprise*, a Supreme Judicial Court Single Justice decision vacating an order excluding the public from voir dire proceedings. *Globe Newspaper Co. v. Commonwealth*, No. SJ-90-172 (Sup. Jud. Ct. for Suffolk County April 17, 1990) (Lynch, J, single justice), at 1.

> allowed back into the courtroom sometime after lunch. There was no lunch recess that day. Individual questioning of jurors ended at 2:15 p.m., at which time the court adjourned for the day. There was no afternoon session. Caffey has no recollection of being asked to leave on any other day.
>
> [The petitioner] was not advised by [defense counsel] about his right to a public trial and was not aware of this right. He said nothing to [defense counsel] about wanting his family to be able to return to the courtroom when he allegedly noticed that they had been required to leave. [The petitioner] claims that if he had the opportunity to speak with [defense counsel], he absolutely would have told him that he wanted his family back into the courtroom. He testified that, if he had had the chance, he would have asked [defense counsel] where everyone was going. He did have that opportunity and said nothing to [defense counsel], which reinforces the Court's finding that the public never was ousted.
>
> [Defense counsel] did not object to any exclusion of [the petitioner's] family or other members of the public. He was aware at the time of the [petitioner's] right to a public trial, but unaware of any exclusion. Even if the public actually had been excluded, which it was not, the [petitioner's] right to a public trial was waived with no prejudice to the [petitioner].

S.A. at 676–680.

The MAC noted that Judge Garsh based her conclusion that the courtroom had not been closed on "her knowledge of her standard practices, her review of the trial transcript and record, and her personal recollection of the trial proceedings." 2018 WL 1801599, at *1. She also "explicitly did not credit the testimony of the defense witnesses concerning the claimed courtroom closure." *Id*. The MAC found no error in the trial judge's "thorough findings and no abuse of discretion in her determination that [petitioner] did not sustain his burden" of proving that the courtroom had been closed. *Id.*

IV.   Legal Standard.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, governs the court's consideration of a federal habeas corpus petition. The only grounds for habeas corpus relief under the statute are if the state court adjudication 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

8

determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A decision by a state court is contrary to clearly established law if the state court "'applies a rule that contradicts the governing law set forth by the Supreme Court,'" or decides a case differently from the Supreme Court that has "'materially indistinguishable'" facts. *Hensley v. Roden*, 755 F.3d 724, 731 (1st Cir. 2014) (quoting *Gomes v. Brady*, 564 F.3d 532, 537 (1st Cir. 2009) (further citations omitted)). A decision is an unreasonable application of clearly established law if the court "'identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Abrante v. St. Amand*, 595 F.3d 11, 15 (1st Cir. 2010)). The requirement for a showing of unreasonableness is different from a showing that the decision was incorrect. *Williams v. Taylor*, 529 U.S. 362 (2000). To be unreasonable, a decision must be "outside the universe of plausible, credible options." *Hensley*, 755 F.3d at 737 (quoting *Sanna v. Dipaolo*, 265 F.3d 1, 13 (1st Cir. 2001)).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1). The presumption of correctness "applies to determinations made by both state trial and appellate courts." *Gaskins v. Duval*, 640 F.3d 443, 452 (1st Cir. 2011) (citation omitted).

V.   Discussion.

A. Petitioner's claims regarding evidence of the decedent's criminal record.

As mentioned above, petitioner argues that he should have been allowed to admit evidence of the decedent's criminal record from Puerto Rico under the rule of *Commonwealth v. Adjutant*,

9

443 Mass. 649 (2005), where the SJC held that "evidence of a victim's prior conduct may be probative of whether the victim was the first aggressor where a claim of self-defense has been asserted and the identity of the first aggressor is in dispute." *Id*. at 650; (#2 at 44.) He asserts first that the trial court violated his right to put on a defense by requiring fingerprint identification or a certified criminal record to allow *Adjutant* evidence to be admitted at trial. (#2 at 49–50.) He further argues that his attorney rendered ineffective assistance in violation of the Sixth Amendment by failing to establish that the record he had obtained from Puerto Rico was the record of the decedent. *Id*. at 47. Finally, petitioner argues that by not providing him with the criminal record of the decedent, and by suppressing the decedent's fingerprints so that he could not verify that the criminal record belonged to the decedent, the Commonwealth violated its duty under *Brady v. Maryland*, 373 U.S. 83 (1963), to turn over exculpatory evidence in violation of his rights under the Sixth Amendment. (#2 at 48-9.)

    i. <u>The MAC reasonably upheld the trial judge's exclusion of *Adjutant* evidence</u>.

Petitioner alleges that the exclusion of evidence of the decedent's criminal record violated his right to put on a defense under the Sixth Amendment. *Id*. at 49-50.[6] The right of a criminal defendant to introduce evidence in his defense is in tension with the courts' "broad latitude" to establish rules excluding evidence from criminal trials. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *Clark v. Arizona*, 548 U.S. 735, 789 (2006). The question boils down to whether evidentiary restrictions "infring[e] upon a weighty interest of the accused and are arbitrary or

---

[6] It is well-established that criminal defendants have a constitutional right to present a complete defense, *see Holmes v. South Carolina*, 547 U.S. 319, 324 (2006), although it is not clear whether the right is grounded in the Due Process Clause of the Fourteenth Amendment, the Compulsory Process or Confrontation Clauses of the Sixth Amendment, or some "interplay of these provisions." *Yildirim v. Demoura*, 280 F. Supp.3d 206, 212 n.4 (D. Mass. 2017) (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) and *Brown v. Ruane*, 630 F.3d 62, 71 n.12 (1st Cir. 2011)).

10

disproportionate to the purposes they are designed to serve." *Holmes*, 547 U.S. at 324 (internal quotations omitted) (citations omitted).[7] Thus, "in order to be entitled to relief [under AEDPA], the petitioner must meet his burden of demonstrating that the [MAC's] decision reflects an unreasonable application of the clearly established 'arbitrary and disproportionate' standard to the facts of his case." *Brown v. Ruane*, 630 F.3d 62, 72 (1st Cir. 2011). This he cannot do, because the exclusion of the evidence here was based on the trial judge's well-justified ruling that the evidence proffered was unreliable and did not meet the legal standard for admission under *Adjutant*. Judge Garsh noted that petitioner did not offer typical *Adjutant* evidence such as witness testimony or certified records, but rather "sought only to introduce court records based upon a reference to those records in a letter from the Puerto Rican Department of Justice." (S.A. at 697 n.10.) She concluded that she did not abuse her discretion "in requiring, in connection with the *Adjutant* motion, more than a letter from the Puerto Rican Department of Justice." *Id*. at 698. She also noted that petitioner had failed to establish "actual details surrounding the crimes that demonstrate that the decedent was the first aggressor" and so properly did not admit the evidence as it did not meet the requirements of *Adjutant*. *Id*.

With regard to the prejudice suffered by petitioner from the exclusion of the evidence, Judge Garsh found that petitioner was "able to support his theory of self-defense with other evidence," in particular, petitioner's own testimony and testimony from the decedent's girlfriend that the decedent was planning on robbing petitioner, that he had a violent character, and that he had a gun. *Id*. at 695. In comparable cases, the First Circuit has found that a criminal defendant's

---

[7] While the SJC classified the holding of *Adjutant* as a "new common-law rule of evidence," this does not mean, as respondent argues here, that any claim concerning the exclusion of such evidence is outside the bounds of federal habeas review. (#23 at 32.) As the First Circuit has said, "[e]ven a generally defensible rule of evidence may be applied so as to produce an unconstitutional infringement." *Brown,* 630 F.3d at 72 (citing *White v. Coplan*, 399 F.3d 18, 24 (1st Cir. 2005)).

right to present a defense was not violated by the exclusion of evidence. *See Brown*, 630 F.3d at 73 (affirming denial of habeas petition where restriction of defendant's cross-examination of witnesses was not prejudicial, as he had "numerous other avenues for advancing his misidentification defense"); *Dolinger v. Hall*, 302 F.3d 5, 11 (1st Cir. 2002) (affirming denial of habeas petition where exclusion of evidence still afforded defendant "an adequate opportunity" to challenge the witness's bias in other ways); *United States v. Cunan*, 152 F.3d 29, 38-9 (1st Cir. 1998) (no constitutional violation in exclusion of hearsay evidence where "ample evidence" of defense theory remained).

Judge Garsh also found that the exclusion of the evidence was not prejudicial because "the evidence against [petitioner] was strong," and it suggested that he was likely the initial aggressor:

> [T]here was evidence to suggest that [petitioner] knew of [the decedent's] arrival at his apartment for a prearranged meeting, retrieved a .45 caliber handgun from the basement to address a drug money dispute with him, and let [decedent] into the apartment. It was reasonable for the jury to infer from the location and seriousness of the wounds that [petitioner] inflicted blunt force trauma on [the decedent's] head after he fired the first shot and that [petitioner] fired the fatal shot to the chest when [decedent] was falling to the ground or already on the ground.[Petitioner] testified that there was a "'struggle' between him and the victim," yet [petitioner] suffered no injuries. Finally, after the murder, [petitioner] immediately cleaned the apartment, disposed of the body, and fled the state.

S.A. at 696. In sum, Judge Garsh concluded that "[petitioner] has not demonstrated that the absence of *Adjutant* evidence deprived him of a substantial ground of defense." *Id.*

The MAC found that Judge Garsh did not abuse her discretion in excluding the evidence "[f]or the myriad reasons detailed" in the Order, and particularly where petitioner failed at trial to establish that the evidence he sought to admit even met the foundational requirements for the admission of *Adjutant* evidence. 2018 WL 1801599, at *2 (citing *Adjutant*, 443 Mass. at 653 n.4.)

On these facts, the MAC's decision was not "objectively unreasonable" and this claim must fail. *Williams*, 529 U.S. at 410; *Brown*, 630 F.3d at 68.

      ii.    <u>Defense counsel did not render ineffective assistance of counsel in connection with efforts to admit the *Adjutant* evidence.</u>

Petitioner argues counsel's failure to press the *Adjutant* motion, including his unsuccessful attempts to obtain the decedent's fingerprints and his apparent lack of knowledge that he could introduce *Adjutant* evidence through a witness's testimony, amounted to ineffective assistance of counsel. (#2 at 47–48, 50.)

Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), defense counsel's performance will be found to be constitutionally lacking only if the defendant can show that: 1) there was deficient performance, demonstrating "errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," and 2) his case was prejudiced by counsel's deficient performance. *Id.*  Deficient performance under *Strickland* is a difficult standard to meet and will be found "only 'where, given the facts known [to counsel] at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it.'" *Rossetti v. United States,* 773 F.3d 322, 327 (1st Cir. 2014) (quoting *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006)). Counsel is "strongly presumed" to have given adequate assistance. *Cullen v. Pinholster,* 563 U.S. 170, 189 (2011). A federal court reviewing a state court's determination under *Strickland* is "doubly deferential," as the petitioner must meet the standards under both *Strickland* and AEDPA. *See id.* at 190; *see also Yeboah-Sefah v. Ficco*, 556 F.3d 53, 71 (1st Cir. 2009) (holding that on habeas review, the federal court considers "whether the state court applied *Strickland* to the facts of petitioner's case in an objectively unreasonable manner.").

The MAC adopted the reasoning of Judge Garsh's Order, rejecting petitioner's claims of ineffective assistance of counsel in connection with Judge Garsh's exclusion of *Adjutant* evidence.

13

2018 WL 1801599, at *2. Judge Garsh found that petitioner's attorney made "significant efforts" to obtain the victim's records, including requesting help from the government, contacting the Department of Justice in Puerto Rico, and attempting to arrange for a fingerprint comparison between the victim and the person in Puerto Rico. (S.A. at 672–673.) She concluded that petitioner failed to show "that counsel's efforts to secure certified records fell measurably below that which might be expected from an ordinary fallible lawyer." *Id.* at 695. With regard to petitioner's complaint that trial counsel "failed to take the Commonwealth up on its offer for a continuance," (#2 at 48), she found that when counsel consulted with petitioner as to "whether to seek more time . . . [t]hey jointly decided not to move to continue the trial date." (S.A. at 674.) Finally, as set out above, she found that the exclusion of the *Adjutant* evidence did not prejudice petitioner. *Id.* at 696.

In conclusion, the MAC's adoption of Judge Garsh's rejection of petitioner's ineffective assistance claim cannot be said to be objectively unreasonable, and this claim fails.

    iii.    The Commonwealth did not fail to turn over *Brady* evidence.

Petitioner complains that the Commonwealth did not provide him with exculpatory evidence as required by *Brady v. Maryland,* 373 U.S. 83 (1963), by failing to give him the criminal record of the decedent and by suppressing the decedent's fingerprints so that he could not verify that the Puerto Rican criminal record belonged to the decedent. (#2 at 48-9.) "There are three components of a *Brady* claim: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Healy v. Spencer*, 453 F.3d 21, 25 (1st Cir. 2006) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

This claim fails because petitioner has not shown that the Commonwealth here suppressed anything. Judge Garsh noted that the Commonwealth assisted petitioner in "obtaining information regarding convictions in Puerto Rico of a person with the same name and date of birth of the decedent" and also "disclosed the very document that the defendant sought to admit into evidence." (S.A. at 700.) She also found:

> [T]here is no evidence that [petitioner] requested the decedent's fingerprints so that he could have them compared to the fingerprints of [the person who had the record in Puerto Rico], presumably because he never was able to secure [the decedent's] fingerprints or arrange for anyone in authority in Puerto Rico to compare the Puerto Rican fingerprints to the decedent's prints.

*Id.* Thus, Judge Garsh held that there was "no evidence that the Commonwealth suppressed or 'failed to disclose' the fingerprints in violation of its duty under *Brady*." *Id.*

The MAC rejected petitioner's *Brady* claim without discussion, 2018 WL 1801599, at *2 n.5, so this court considers Judge Garsh's reasoning. *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018). Petitioner has not shown that the trial court unreasonably applied the law of *Brady* to the facts of the case and is not entitled to habeas relief on this ground.

B. Petitioner's claims regarding the alleged courtroom closure.

Petitioner asserts that the trial judge's finding that there was no courtroom closure was unreasonable, and trial counsel was ineffective for not objecting to the alleged closure. (#2 at 54.) The five-page section of Judge Garsh's Order, repeated in its entirety above, in which she recounted the facts concerning this issue and detailed her findings, demonstrates that she carefully considered petitioner's claim and reasonably rejected it. The MAC adopted her "thorough findings" which the MAC found to be "clear and supported by the record, her routine practice, and her personal recollection of the case." 2018 WL 1801599, at *1. With regard to Judge Garsh's conclusion that counsel was not ineffective concerning the closure issue, the MAC "agree[d] with

15

the judge's determination that even assuming a courtroom closure had occurred, the defendant has not met his burden of establishing prejudice" resulting from the closure. 2018 WL 1801599, at *1 n.4.

Petitioner has not met his burden to show that Judge Garsh's factual findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). *See Companonio v. O'Brien*, 672 F.3d 101 (1st Cir. 2012). The court necessarily concludes that the MAC's adoption of Judge Garsh's findings was not unreasonable.

Petitioner asserts that trial counsel's failure to object to the alleged courtroom closure and to advise him of his right to a public trial constituted ineffective assistance of counsel. (#2 at 52.) This claim fails because petitioner has not overcome the presumption of correctness afforded to Judge Garsh's determination that the closure did not occur. Furthermore, even if the courtroom had been closed, petitioner would not meet the *Strickland* standard for a showing of prejudice, for the same reasons set out above with regard to petitioner's other ineffective assistance claim. To establish prejudice in the context of an ineffective assistance claim where there was a public-trial violation, the defendant carries the burden to either show "a reasonable probability of a different outcome" in his or her case or … that the particular "public-trial violation was so serious as to render his or her trial fundamentally unfair." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1911 (2017). Here, petitioner has shown neither.

### VI.   Conclusion.

For the reasons stated above, I RECOMMEND that petitioner's habeas petition (#1) be DENIED.

VII.   <u>Review by District Judge</u>.

The parties are advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within 14 days of the date of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378–9 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

December 4, 2020                                                     /s/ M. Page Kelley
                                                                     M. Page Kelley
                                                                     Chief United States Magistrate Judge